Moncrief, J.
The complaint alleges that the defendants as partners made the note, that the payee (The International Insurance Company) duly indorsed it, and that it was thereupon duly transferred and delivered to the plaintiff, and that it- is unpaid and became due before suit brought.
1. Denies that the International Insurance Company is a corporation duly organized, and avers that it never had any legal existence as a corporation.
2. Denies that it had any “ legal power or capacity to transfer said note by its indorsement or otherwise.”
3. It avers that the note was made for the accommodation of the payee, the latter agreeing not to negotiate it, and that these facts were known when the plaintiff took it.
*24 4. That the loan, as security for which the plaintiff held it, has been fully paid.
The making of the note and its indorsement by the Company are therefore admitted.
The existence of the International Insurance Company as a corporation was sufficiently proved, as against the present defendants.
The remaining matters of defense are, that the note was made to accommodate the Company, that the plaintiff'knew this when he took it, that he claims to hold it as security for a loan, and that such loan has been paid. If the loan has not been paid, and if more of it in amount than the face of the note and interest is unpaid, then there is no, defense, based on the facts alleged in the answer.
How the minutes of the Company affected any of the issues raised by the answer is left to conjecture merely. The case does not disclose their contents. The rejection of them does not appear to be a matter which could possibly have prejudiced the defendants. The exception to the decision rejecting that evidence is therefore untenable.
The motion to dismiss the complaint was properly denied. Ho evidence had then been given that the note was made for the accommodation of the payees.
The questions (at folio 8) were only adapted to show that the note in suit, with others, was taken by S. Gr. Ogden to secure money lent by him, and that the plaintiff took it knowing that fact.
The question whether there was any resolution of the Board of Trustees authorizing the transfer was properly excluded, as the due indorsement of the note by the Company was admitted.
How many securities the lender held is of no moment. The material question is, had the loan been paid ? The questions in respect to those matters were properly overruled. It appeared ■ that $15,000 was lent and only $12,000 repaid. On this point there is no conflict of evidence. The exceptions (at folios 11-18) are not tenable.
There is no allegation in the answer that the defendants’ subscription was procured by fraud, and therefore the evidence offered (at folio 17) tending to show such to be the fact, was properly excluded.
*25 The objection, to the reading of the note in evidence, and the exception to the decision admitting it are, for the reasons already stated, untenable.
The evidence admitted, as to what officer was in the habit of indorsing the notes of the Company, was immaterial and in no way prejudicial to the defendants, as the due indorsement of the note by the corporation was admitted by the answer.
As the case stands, and viewing it as one in which no issues were to be tried except those raised by the pleadings, it is simply this:
The defendants are sued as the makers of a note, and the plaintiff sues as indorsee. It is admitted that the payee, which is a corporation, duly indorsed it to the plaintiff, and that it was thereupon duly transferred and delivered to the plaintiff, with this qualification; that the defendants deny that the payee ever had a legal existence as a corporation, or “ any power or capacity ” to make any transfer of the note.
The payee was created a corporation by a special act, passed in 1844, and after that its name was changed by statute in 1855, and subsequently did business for years as a corporation, and the defendants dealt with it as such. For all the purposes of this action, its existence is fully established, and of course its capacity to indorse and negotiate any note owned by it.
The only other defense set up is disposed of. Although an accommodation note, and known to be so to the first indorsee when he took it, he was a holder for value as he had advanced on its credit and on that of other notes transferred with it $15,-000, only $12,000 of which has been repaid.
The defendants are therefore liable. The evidence justifies the conclusion that it is a business note, and upon full consideration, by force of the 11th section of the charter of the Company.
The facts as found, do not state whether it was an accommodation note, nor whether the loan had been repaid. But the facts as found, assuming them to be all the facts which the evidence given established, are sufficient, including those admitted by the pleadings, to support the judgment.
I think it should be affirmed.
Bosworth, Ch. J., concurred in this opinion.
*26 Hoffmáít, J.
The complaint sets out the making and delivery of the note to the Company; that it was drawn to the order of such Company by name; and that, before maturity, the said International Insurance Company duly indorsed the said promissory note, and the same was thereupon duly transferred and delivered to the plaintiff.
The defendants answer as follows: “And these defendants deny that the said alleged corporation, The International Insurance Company, had any legal power or capacity to transfer said note to the plaintiff, by its indorsement or otherwise.” •
Thus the allegation of an indorsement by the Company is impliedly admitted; the actual fact of indorsement, by authority of the corporation, through some competent agency, is conceded; and all that is put in issue is, a legal proposition that the Company itself had no legal capacity or power to transfer the note.
Fow, the testimony presents this state of facts: The President was proven, by sufficient evidence, to have been in the habit of indorsing the notes; the Finance Committee were made aware of this, as well as several of the other Directors: indeed, the testimony is, that the Finance Committee knew of the transaction with S. Gr. Ogden upon which this and a mass of other notes were delivered to him.
Yet it is also proven that it was not the custom of the Board to inquire into the financial matters; consequently the Board, as a Board sitting, did not know of the transaction.
Then, a question was put to the witness Ogden, Vice-President of the Company: “Did your father know that there was no resolution of the Board of Trustees authorizing the transfer?” The question was, on objection of the plaintiff, ruled out, and an exception taken.
The 8th section of the act of moneyed corporations, (1 R. S., 588,) is applicable to the present Company. The transfer of effects exceeding the value of $1,000, without a previous resolution, is void, except to a purchaser for valuable consideration without notice. The notice must be of the fact that there had been no previous resolution. The fact of notice must be positivety proven or necessarily inferable from what is proven. And here the defendants offer to prove knowledge by Ogden at the time of the transfer to him, that there was no such resolution.
*27 See the case of Blunt v. Hanna, (reported in Cleaveland’s Banking System, p. 7, note,) before Vice-Chancellor Sandford.
I do not understand that that case, or that of Gillet v. Phillips, (8 Kern., 114,) is affected or questioned in any of its positions by the later authorities, except upon the question of a banking corporation, created under the general act,, being governed by the provisions as to moneyed corporations. (17 N. Y. R., 521.) Notice of the absence of a resolution of a Board was there chiefly deduced from the situation of the assignee as a Director.
The question, then, seems to resolve itself into this: Has the defendant debarred himself from the defense by the form of his answer ?
It is insisted that'the answer admits of the construction that the Company had no power to transfer but through a resolution of the Board; that, by this allegation, involved in the denial, they put the plaintiff to prove his title through a resolution, or through something equivalent to and a substitute for it.
But, in our opinion, the language will not justly bear such a meaning. We must construe the answer with reference to the complaint. The allegation is, that the Company duly indorsed the note, and the same was thereupon duly transferred and delivered to the plaintiff.
This fact of indorsement by the Company is met by an averment that the Company had not legal capacity to indorse and transfer the note. The defendant tenders only the issue that there was no such capacity. Presumptively, a corporation has the power to pass away notes held by it, for some purposes; and the transfer will not be assumed to be for illegal purposes. The defendant, therefore, was to show some prohibition, or fact, which destroyed this capacity in the present case. This he has failed to do; and the fact of indorsement by the Company stands conceded.
2. Another branch of the defense taken by the answer is, that the Company was never duly organized, and had not a legal existence.
The charter of the Company was produced in evidence. Proof of acts under it were given. Proof of the defendants’ dealing with it as a corporation is given, besides the note itself. Its legal existence is fully made out as against these defendants.
*28 8. The answer next sets up that the note was an accommodation note to the Company, and this was known to the plaintiff; and, further, that the loan of the plaintiff to the Company has been fully paid.
There is no evidence of Ogden’s knowing the character of the note. There is evidence that his loan was not paid. And, in that case, even if he knew it was accommodation paper, there would be no defense on this ground.
The exceptions taken upon the trial remain to be considered.
The defendants’ counsel offered to read the minutes of the Company, which was overruled, and an exception taken. In what way these minutes bore upon any issue in the case, does not appear. The counsel did not state in his offer the object of it, nor the contents or tenor of the minutes.
'The question was asked, how Ogden got the note from the Company. It was objected to, and the question ruled out, and an exception taken. Ho question was raised by the answer as to the manner in which Ogden acquired the note from the Company—that it was in an illegal or fraudulent manner. Besides, the question seems fully answered by replies to other questions.
It was asked, how many notes were transferred to Ogden upen the transfer of this note. On objection this was ruled out, and an exception taken. This fact was immaterial to the issue. The only question pertinent to this part of the case was, whether Ogden had been paid in full. Afterwards, the fact is testified to. He got about $19,000 in notes, of which $12,000 had been paid.
The question as to the judgments had on any of the notes was equally irrelevant, and so also was the question as to the securities now held by Ogden, and that as to loss under the policy.
The inquiry as to the character of the subscribers to the stock, being office-boys, insolvent, &c., was irrelevant, when there was no allegation in the answer of the subscription of defendants being obtained by fraud.
The extent of capital and number of trustees, were facts equally irrelevant.
The judgment should be affirmed.
Judgment affirmed.